UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENNETH BULLOCK,

       Petitioner,                             Case No. 15-13510

v.

                                          HON. AVERN COHN

CARMEN PALMER,

       Respondent.

_____/

## MEMORANDUM AND ORDER
## DENYING PETITION FOR WRIT OF HABEAS CORPUS
## AND
## DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

### I. Introduction

This is a habeas case under 28 U.S.C. § 2254. Kenneth Bullock, (Petitioner), is a state prisoner serving a sentence of thirty to seventy years each for convictions for armed robbery, M.C.L. § 750.529 and carjacking, M.C.L. § 750.529a. He also received a consecutive two year sentence for felony-firearm, M.C.L. § 750.227b and time served for felon in possession of a firearm, M.C.L. § 750.224f. Petitioner has filed a pro se petition for writ of habeas corpus claiming that he is incarcerated in violation of his constitutional rights. Respondent, through the Attorney General's Office, filed a response, arguing that the claims lack merit. For the reasons which follow, the petition will be denied.

### II. Procedural History

Petitioner was convicted of the above offenses following a jury trial in the Wayne County Circuit Court.

Petitioner filed an appeal of right to the Michigan Court of Appeals. His conviction was affirmed. People v. Bullock, No. 317639, 2015 WL 213132 (Mich. Ct. App. Jan. 15, 2015). Petitioner then filed an application for leave to appeal to the Michigan Supreme Court, in which he raised the same claims that he raised in his appeal of right before the Michigan Court of Appeals. The Michigan Supreme Court denied petitioner leave to appeal. People v. Bullock, 498 Mich. 855 (2015)

Petitioner seeks habeas relief on the following grounds:

I. Petitioner should be granted a writ of habeas corpus because trial counsel was ineffective in failing to challenge the suggestive live line-up.

II. Petitioner should be granted a writ of habeas corpus because trial counsel was ineffective in failing to call as a witness the man who sold petitioner the vehicle which was the subject of the carjacking.

### III. Facts

The material facts leading to petitioner's conviction are recited verbatim from the Michigan Court of Appeals' opinion affirming his conviction, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). See Wagner v. Smith, 581 F.3d 410, 413 (6th Cir. 2009):

This case arises from a carjacking and armed robbery that occurred on October 20, 2011, in Detroit, Michigan. Complainant, Yulanda Russell, testified that after she pulled into her driveway and exited her black 2012 Dodge Charger, defendant approached her and threatened her with a handgun. Russell fell backwards, and defendant grabbed her purse and the keys to her car. Defendant then drove away in the Charger with Russell's purse.

Police recovered Russell's car during an undercover operation in early 2013. The car was posted for sale on the website Craig's List and advertised as a 2011 model year Charger. The seller covered the car's 2012 model year VIN, or vehicle identification number, with a fraudulent VIN sticker corresponding to a 2011 Charger. Defendant arrived as the police were taking the seller into custody and claimed that the car belonged to him.

2

Defendant produced a title to the car matching the fraudulent VIN, and the police placed him under arrest as well.

Russell identified defendant in a corporeal lineup on January 14, 2013, and testified regarding the identification at trial. Defendant's trial counsel sought to undermine the accuracy of Russell's identification by arguing that the lineup was unfairly suggestive. Defense counsel also chose not to call defendant's proposed alibi witness, Dickow Dehko. The jury ultimately convicted defendant on all of the charged offenses.

People v. Bullock, 2015 WL 213132, at * 1.

## IV.  Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied

3

clearly established federal law erroneously or incorrectly." Id. at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011)(citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103. A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. See Woods v. Etherton, 136 S. Ct. 1149, 1152 (2016).

## V.  Analysis

### A.

Petitioner claims that he was denied the effective assistance of trial counsel. To show that he or she was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland v. Washington, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. Id. In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. Strickland, 466 U.S. at 689. Second,

4

the defendant must show that such performance prejudiced his defense. Id.  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  The Supreme Court's holding in Strickland places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. See Wong v. Belmontes, 558 U.S. 15, 27 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" Knowles v. Mirzayance, 556 U.S. 111, 123 (2009)(quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)).  "The pivotal question is whether the state court's application of the Strickland standard was unreasonable.  This is different from asking whether defense counsel's performance fell below Strickland's standard." Harrington v. Richter, 562 U.S. at 101.  Indeed, "because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Knowles, 556 U.S. at 123 (citing Yarborough v. Alvarado, 541 U.S. at 664).  Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a Strickland claim brought by a habeas petitioner. Id.  This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself."Harrington, 562 U.S. at 101.

5

**B.**

**1.**

Petitioner first claims that trial counsel was ineffective for failing to bring a pre-trial motion to suppress Russell's pre-trial and in-court identifications because he claims that the lineup procedure was suggestive.  Petitioner says that the police lineup was unduly suggestive because petitioner was the only light complected African-American in the lineup, while the other five participants were either medium or dark complected.  Petitioner also argues that the lineup was suggestive because of the wide range of ages, heights, and weights among the participants.  Russell described the suspect as a light-skinned black male, 5 feet, nine inches, or five feet, tench inches tall, approximately 20 years of age, and weighing 160 pounds.  Petitioner at the time of the lineup was five feet, ten inches tall and 165 pounds.  Petitioner points to several differences between himself and the other lineup participants: one weighed 19 pounds less than petitioner, another weighed 40 pounds more; one participant was six feet, one inch tall, three of the participants were 20, 23, and 25 years old; and petitioner was the only light-skinned participant.  Petitioner notes that several of the participants did not even fit the description given by Russell of her assailant.

The Michigan Court of Appeals rejected this claim, finding that the lineup was not unduly suggestive:

> All of the participants fell within an age range of 20 to their early 30s; Russell stated that three of the participants were around the carjacker's height; a 40 pound weight difference is likely noticeable, but a 19 pound difference may not be, and defendant does not dispute that the other participants were of a similar weight.  Russell's belief that defendant was the only light-skinned participant does not, under the total circumstances, establish that the lineup was impermissibly suggestive.

6

People v. Bullock, 2015 WL 213132, at * 3.  Moreover, because the lineup was not suggestive, the Michigan Court of Appeals concluded that counsel was not ineffective for bringing a motion to suppress Russell's identification.  Id.  This conclusion was not unreasonable or contrary to Supreme Court precedent, as explained below.

**2.**

Due process protects the accused against the introduction of evidence which results from an unreliable identification obtained through unnecessarily suggestive procedures. Moore v. Illinois, 434 U.S. 220, 227 (1977).  However, to determine whether an identification procedure violates due process, courts look first to whether the procedure was impermissibly suggestive; if so, courts then determine whether, under the totality of circumstances, the suggestiveness has led to a substantial likelihood of an irreparable misidentification. Neil v. Biggers, 409 U.S. 188 (1972).  Five factors should be considered in determining the reliability of identification evidence: (1) the witness's opportunity to view the criminal at the time of the crime; (2) the witness's degree of attention at the time of the crime; (3) the accuracy of the witness's prior description of the defendant; (4) the witness's level of certainty when identifying the suspect at the confrontation; and (5) the length of time that has elapsed between the time and the confrontation. Id. at 199-200.

A criminal defendant has the initial burden of proving that the identification procedure was impermissibly suggestive.  It is only after a defendant meets this burden of proof that the burden then shifts to the prosecutor to prove that the identification was reliable independent of the suggestive identification procedure. See United States v. Wade, 388 U.S. 218, 240, n. 31(1967).  If a defendant fails to show that the

7

identification procedures were impermissibly suggestive, or if the totality of the

circumstances indicates that the identification is otherwise reliable, no due process

violation has occurred.  As long as there is not a substantial likelihood of

misidentification, it is for the jury to determine the ultimate weight to be given to the

identification.  See United States v. Hill, 967 F.2d 226, 230 (6th Cir. 1992).

**3.**

Here, Petitioner has failed to show that the police lineup was unduly suggestive.

All six of the participants in the lineup were in an age range between their early

twenties and early thirties.  Three of the participants were close to the carjacker's

height.  Although one participant was forty pounds heavier than the description of the

assailant and petitioner, and another was 19 pounds heavier, the other participants

were of a similar weight to petitioner.  Because the lineup procedure was not unduly

suggestive, Petitioner cannot prevail on this claim that trial counsel was ineffective for

failing to move for suppression of the pre-trial identification.

Moreover, the record shows that although trial counsel did not file a pre-trial

motion to suppress the identification, counsel extensively cross-examined Russell

about potential problems with her identification of petitioner.  This decision was, as the

Michigan Court of Appeals held, within the realm of reasonable trial strategy.  Trial

counsel cross-examined Russell in detail about the discrepancies of the lineup

participants and obtained an admission from her that petitioner was the only light

complected person in the lineup and that he was wearing a goatee, whereas she had

described her assailant as clean-shaven. (Tr. 6/12/13 at pp. 272-80).  Trial counsel

later questioned Detective Frank Carroll in great detail about the lineup, the differences

8

in height, weight, age, and complection between the participants, the fact that petitioner was the only light-skinned person in the lineup, and the fact that several of the participants matched neither the description of the carjacker or petitioner. (Tr. 6/13/13, pp. 11, 14-16, 20, 26-27, 29-50, 72-75, 79-80). Trial counsel also obtained an admission from Detective Carroll that he did not take a photograph of the lineup, even though it was police procedure to do so. (Id., pp. 56, 62). Trial counsel also suggested in his questions that Detective Carroll may have written down the wrong heights or weights of some of the lineup participants. (Id., pp. 68-75). Trial counsel later attacked the lineup procedures in his closing argument. (Id., pp. 134-40).

Finally, even assuming trial counsel was deficient for failing to file a pre-trial motion to suppress the pre-trial identification, Petitioner was not prejudiced because the victim had an independent basis for her in-court identification. Russell testified that the robbery and carjacking took place at about 1:00 in the afternoon when it was light outside. Petitioner was about five feet away from Russell. Russell said she had good visual contact with her assailant. (Tr. 6/12/13, pp. 241-44, 251). Russell testified that on a scale of one to ten in terms of the confidence of her in-court identification of petitioner, she indicated a confidence level of ten. (Id., pp. 254, 257-58). Russell testified that she participated in the lineup and identified Petitioner, whom she said looked a little different because he had a goatee at the time of the lineup. Russell quickly picked Petitioner out at the lineup and later identified him at the preliminary examination. (Id., pp. 254-57). Russell also said that she was able to positively identify petitioner because he looked a lot like her son. (Id., pp. 268-69). Detective Frank Carroll testified that Russell's identification of petitioner at the lineup was "shockingly

9

fast." (Tr. 6/13/13, pp. 50-51).

Overall, Petitioner is not entitled to relief on his first claim.

### C.

### 1.

In his second claim, Petitioner contends that trial counsel was ineffective for failing to call Dickow Dehko as a witness to testify that petitioner purchased the victim's car from him.

The trial court conducted a post-trial <u>Ginther</u> [1] hearing on this ineffective assistance of counsel claim on July 8, 2013 and July 18, 2013, after which she rejected Petitioner's claim. (Tr. 7/18/13, pp. 76-78).  The Michigan Court of Appeals also rejected this claim, explaining:

> The trial court did not err in ruling that the failure of defendant's trial counsel to call Dehko as a witness was a reasonable tactical decision. Dehko, who ran two car repair shops, testified that a light-skinned black man sold him a black 2011 Dodge Charger for cash in the summer of 2012.  Dehko, in turn, claims that he sold the car to defendant in the fall of 2012 and made a profit of $ 2000.  Dehko admitted that he failed to report his income from the sale to the Internal Revenue Service and that the transfer was illegal because he failed to first record his ownership of the vehicle with the Michigan Secretary of State.
>
> Defendant's trial counsel interviewed Dehko and listed him as a possible witness but did not call him at the time of trial because Dehko could not provide the name of the man who sold him the car.  Defense counsel thought this was suspicious since Dehko allegedly was a "legitimate" businessman.  Further, according to defense counsel, when Dehko was presented with a copy of the title reflecting the fraudulent VIN that defendant had at the time of his arrest, Dehko said that was the document *he received from defendant.*  Defendant, who was present during this conversation, and defense counsel were stunned by this comment.  Defendant then walked out of the room with Dehko, only to

---

[1] <u>People v. Ginther</u>, 390 Mich. 436, 443 (1973).

have them both return, with Dehko now claiming to defense counsel that he made a mistake. Evidence admitted at the <u>Ginther</u> hearing established that the police and the prosecutor were familiar with Dehko; he had nine aliases and multiple past convictions for receiving and concealing stolen property in connection with his car repair businesses. Dehko also admitted that he sold defendant the car illegally and never reported his purchase or sale of the car for tax purposes. Consequently, counsel determined that Dehko was not a credible witness. Defendant's counsel stated that when he and defendant discussed the issue, defendant agreed that Dehko should not testify for these very reasons. Under these circumstances, the failure of defendant's trial counsel to call Dehko as a witness was the type of reasonable strategic decision this Court does not second guess on appeal.

Defendant also has not demonstrated that Dehko's testimony would have changed the outcome at trial. As explained, Dehko was not a credible witness. Even if he did testify, Dehko could not account for the fraudulent VIN sticker. More importantly though, he offered no proof, aside from his own unsupported assertion, that the car he sold to defendant was actually the same car at issue in this case. Dehko also testified that the light-skinned man who sold him the car was significantly taller than defendant, undercutting the theory of mistaken identification. Russell, on the other hand, identified defendant confidently through a proper lineup and at trial. The jury found Russell's testimony credible despite defense counsel's efforts to play up the suggestiveness issue during cross-examination and in closing argument. It is unlikely that Dehko's testimony would have made a difference in defendant's convictions.

<u>People v. Bullock</u>, 2015 WL 213132, at *3-4 (emphasis original, internal citation omitted).

## 2.

The Michigan Court of Appeals' conclusion is reasonable and not contrary to Supreme Court precedent. First, the trial court who conducted the <u>Ginther</u> hearing observed Dehko's demeanor at the hearing and indicated several times that he was not a credible witness. (Tr. 7/8/13, pp. 52-53; Tr. 7/18/13, pp. 76-78). Federal courts must give state court factual determinations a presumption of correctness that can be overcome only by clear and convincing evidence to the contrary. 28 U.S.C. §

2254(e)(1).  Here, there is no clear and convincing evidence to reject the trial court's credibility finding regarding Dehko.  The trial court's determination that Dehko would not have made a credible witness was reasonable for the reasons stated by the trial court at the conclusion of the <u>Ginther</u> hearing and by the Michigan Court of Appeals. Under <u>Strickland</u>, a court must presume that decisions by counsel as to whether to call or question witnesses are matters of trial strategy.  In light of the fact that Dehko's credibility could have been called into question on a number of points had he testified, trial counsel was not ineffective in failing to call him as a witness.

### VI.  Conclusion

For the reasons stated above, the state courts' rejection of Petitioner's claims did not result in decisions that were contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts.  Accordingly, the petition for a writ of habeas corpus is **DENIED.**

Furthermore, reasonable jurists would not debate the Court's assessment of Petitioner's claims, nor conclude that the issues deserve encouragement to proceed

further.  The Court therefore **DECLINES** to grant a certificate of appealability under 28

U.S.C. § 2253(c)(2). [2] See Slack v. McDaniel, 529 U.S. 473, 484 (2000).

      **SO ORDERED.**

                S/Avern Cohn                
                AVERN COHN
                UNITED STATES DISTRICT JUDGE

Dated: June 28, 2016
      Detroit, Michigan

---

[2] "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.